Argued and submitted September 5, 1996, affirmed in part; reversed and in part and remanded for new trial March 26, 1997

## STATE OF OREGON,
*Respondent,*

*v.*

## JACK CHARLES HOUSTON,
*Appellant.*

(10-94-07752A; CA A89553)

935 P2d 1242

Michael V. Phillips argued the cause for appellant. With him on the brief was Debra Thatcher Gilcrest.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were

Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Defendant was charged with unlawful possession and unlawful delivery of a controlled substance. As to the possession charge, defendant argues that the trial court erred in failing to give certain requested jury instructions. We hold that there was no error and affirm the conviction on that charge without further discussion. As to the delivery charge, the indictment stated that defendant committed the crime some time during an eight-month period. Defendant asked the court to require the state to specify when the crime was supposed to have occurred. The trial court denied the request. At trial, evidence was produced that the crime could have occurred at any of six different times. Defendant asked the court to instruct the jury that, to reach a guilty verdict, it must agree that the crime occurred at one of those times. The trial court declined to give the instruction. On appeal, defendant argues that his conviction on the delivery charge must be reversed, because the jury never was required to agree on a particular criminal act as the basis for its verdict. We agree and reverse and remand for a new trial on the delivery charge.

On August 4, 1994, the police conducted a SWAT-team raid of defendant's property and arrested defendant and others living there. Upon searching defendant incident to his arrest, police found a film canister containing methamphetamine in defendant's pocket. The police also found scales that could be used for weighing drugs and records that may have indicated drug sales. Defendant was charged with one count of unlawful delivery of a substantial amount of a controlled substance, more than ten grams, between January 1 and August 4, 1994.

At trial, the state presented evidence of multiple deliveries, including that defendant confessed to selling one-half ounce of methamphetamine two days before August 4, 1994; that defendant confessed to delivering drugs during some unknown time before August 4, 1994; that defendant sold methamphetamine at an unspecified time as testified to by Jim Apparcel and Kristina Mull, who were living with defendant in August 1994; that defendant and Apparcel used drugs that were not confiscated in the arrest after being

released from custody on August 4, 1994, as testified to by Apparcel; that defendant delivered drugs during the summer sometime before August 4, 1994, as testified to by Steven Linscott, the son of defendant's girlfriend, both of whom resided with defendant; and that defendant entertained unusual guests at unusual times as testified to by Richard Wiedenhaft, defendant's neighbor.

At the close of the state's case in chief, defendant moved the court to require the state to elect a specific date or event as the basis for the delivery charge. The court denied the motion. At the conclusion of the trial, defendant requested that the court give to the jury the following instruction:

> "At least ten of your number must agree to reach a verdict. In order to return a Guilty verdict * * * *there had to be a single occasion when all of the elements establishing the crime simultaneously occurred together at the same time and at least ten of your number must agree upon that occasion.*"

(Emphasis supplied.) The trial court declined to give the instruction. During closing, the state argued to the jury that it had established half a dozen incidents of delivery and that any of them would suffice to support a verdict of guilty. The jury then returned a verdict of guilty.

Defendant argues that the trial court erred in failing to require the state to elect a particular delivery as the basis for its charge and in failing to instruct the jury that it must agree on a particular delivery as the basis for its verdict. Otherwise, defendant argues, he could have been convicted without the requisite number of jurors agreeing that defendant actually committed the crime. The state argues that it does not matter that the jury might not have agreed that a given set of facts constituted the crime that is the subject of the charge, as long as the requisite number of jurors agree that, at some time during the eight months mentioned in the indictment, defendant committed the crime. "The jury was not required to agree on what facts supported the conviction on that charge," the state explains, "but only that defendant committed the crime during the time specified in the indictment."

Because defendant's assignments as to the motion to require election and the proposed jury instruction raise the same legal issue, defendant combines his legal arguments. ORAP 5.45(6). The state does likewise, and so do we.

In *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), the Supreme Court held that the jury must agree on the statutorily defined factual circumstances that constitute the crime of aggravated murder. In that case, the indictment charged two theories of aggravated murder: one was that the homicide was committed during the course of committing a robbery and the other was that the homicide was committed to conceal the identity of the perpetrators of the robbery. The trial court instructed the jury that

> "it is not necessary for all jurors to agree on the manner in which Aggravated Murder was committed. That is, some jurors may find that it was committed during the course of and in furtherance of Robbery in the First Degree, and others may find it was committed to conceal a crime or its perpetrator. Any combination of twelve jurors agreeing that one or the other or both occurs is sufficient to establish this offense."

*Id.* at 374-75. This court affirmed the conviction, and the Supreme Court reversed. The problem with the jury instruction, the court held, was that it failed to require the jury to agree on the factual predicates to the crime charged:

> "A defendant may have killed a person in order to conceal the commission of a robbery or of the identity of the robber, whether or not the defendant participated in the robbery. Or the defendant may have personally killed the victim in the course of a first degree robbery without having any thought of concealing the identity of the robber, which may be known to numerous witnesses. The challenged instruction explicitly tells jurors to return a verdict of aggravated murder even if some of them doubt that the defendant was a participant in the robbery but believe that he meant to conceal it and others believe that defendant was a robber but not that concealing the crime played a role in the killing. * * * In short, the instruction relieves the jury from seriously confronting the question whether they agree that any factual requirement of aggravated murder has been proved beyond a reasonable doubt, so long as each juror is willing to pick one theory or another."

*Id.* at 375. To convict, the court concluded, the jury must agree on the facts required by the statute that sets out the elements of the crime. *Id.* at 377.

The Supreme Court explained, and distinguished, its *Boots* opinion in *State v. King,* 316 Or 437, 852 P2d 190 (1993). In that case, the defendant was charged with driving under the influence of intoxicants, which, under ORS 813.010, is committed if a person drives a vehicle while the person:

"(a) Has .08 percent or more by weight alcohol in the blood * * *;

"(b) Is under the influence of intoxicating liquor or a controlled substance; or

"(c) Is under the influence of intoxicating liquor and a controlled substance."

At trial, the state produced evidence that the defendant was driving while having a blood alcohol content of .08 percent or more and that the defendant was driving while under the influence of alcohol. Citing *Boots,* the defendant requested an instruction requiring the jury to agree on one set of facts or the other. The trial court declined, and this court and the Supreme Court affirmed the subsequent conviction. The Supreme Court began its opinion with a discussion of its decision in *Boots.* First, the court noted that *Boots* is not limited to aggravated murder cases. Second, it explained that the basic rationale in *Boots* was that juries must agree on the facts that constitute the crime charged:

"Central to the *Boots* decision was a concern for the possibility that, at the close of trial, a jury could agree on guilt by agreeing that *some* one or another of a number of aggravating factors was proved *without* agreeing that any *particular* aggravating factor was proved. Logically, such a failure to agree on an aggravating factor (a factor having been defined by the court as an element of the offense) would result in a jury's failing to agree that a defendant had committed a particular crime of aggravated murder *at all.* The court stressed that jury unanimity is required for 'facts that the law (or the indictment) has made essential to a crime,' not for 'factual details, such as whether a gun was a

revolver or a pistol and whether it was held in the right or
left hand.' "

*Id.* at 442 (citations omitted; emphasis in original). The court
then turned to the statute at issue and concluded that, as a
matter of statutory construction, ORS 813.010 describes but
a single offense, which may be established by evidence
beyond a reasonable doubt that the defendant did two
things—(1) drove a motor vehicle, and (2) was under the
influence of intoxicants—and that the statute merely lists
three different ways of proving the single predicate fact that
the defendant was under the influence of intoxicants. Thus,
the court concluded, the case was distinguishable from *Boots*,
in which the jury was instructed that it did not need to agree
on the factual predicates to the crimes themselves. *Id.* at 446.

We have had two occasions to consider the *Boots*
unanimity rule. In *State v. White,* 115 Or App 104, 838 P2d
605 (1992), the state brought a charge of menacing, which
requires proof that the defendant acted by word or conduct
that placed another in fear of imminent serious physical
injury. ORS 163.190(1). At trial, evidence was admitted that
the defendant, while engaged in an argument with his neigh-
bor, first brandished a flashlight and then waived a gun at
the neighbor. The defendant argued that the trial court
should have instructed the jury that it must agree on a spe-
cific act to support its verdict: either that the defendant bran-
dished the flashlight or that he waved the gun. We disagreed,
holding that proof of waving either a gun or a flashlight is
simply a means of establishing the fact that, by his conduct,
the defendant intended to place his neighbor in fear of immi-
nent serious injury. *White*, 115 Or App at 107.

In *State v. Randolph*, 123 Or App 566, 860 P2d 873
(1993), *rev den* 318 Or 382 (1994), the state charged the
defendant with a number of sex crimes committed over an
nine-month period. At the close of the state's case in chief, the
defendant moved for an order requiring the state to elect
which occurrences it would rely on as proof of the crimes. The
trial court declined to do so. The defendant then requested
that the trial court give a jury instruction that was charge-
specific and was designed to inform the jury that, as to each

charge, at least ten had to agree that the defendant had committed the same act. The trial court gave its own instruction, namely, that the jury would be required to agree on "an occasion * * * when all of the elements establishing [the] crime * * * simultaneously occurred together at the same time." On appeal, the defendant argued that the trial court erred in failing to require the state to elect and in failing to give the requested instruction. We held that the failure to require the state to elect posed no problem under *Boots*, because the trial court's instruction "was adequate to inform the jury that it had to agree that the same act had been proved and that the act occurred on a separate occasion." *Id.* at 571.

We draw from the foregoing case law the general rule that juries must agree on the factual occurrences that constitute the statutorily defined elements of the crime at issue, even though they need not agree on the evidentiary bases for their decisions as to those elements. The rule only makes sense. To hold otherwise would permit juries to declare a defendant guilty without the requisite agreement that the defendant actually committed the acts that constitute the crime charged. We also draw from the cases, particularly *Randolph*, that the trial court generally has the discretion to address the problem either by requiring the state to elect at the close of its case-in-chief or by giving appropriate jury instructions. There may be circumstances in which one approach may be more appropriate than the other. For example, when time is an element essential to the defense, that is, when the defense is an alibi or a statute of limitations, an election by the state at the close of its case-in-chief may be more appropriate. *See, e.g., State v. Yielding*, 238 Or 419, 424, 395 P2d 172 (1964) ("[w]hen a defendant * * * can show that the time element is essential to his defense * * * the court must require the state to prove the date").

Turning to the facts of this case, we conclude that defendant is correct that the jury was permitted to decide this case without agreement that he actually committed the crime charged. This is not a case like *King* or *White*, in which the state merely offered alternative evidence of a single factual occurrence. Instead, it is like *Boots,* in that the jury was allowed to base its verdict on alternative factual occurrences, each of which itself would be a separate crime. Some jurors,

for example, could have believed that defendant delivered methamphetamine two days before his arrest and at no other time, in accordance with defendant's confession. Others could have believed that defendant delivered drugs only during the summer before the arrest as described by witness Linscott. Still others could have believed that defendant delivered drugs to Apparcel on August 4, 1994, and at no other time. In other words, defendant could have been convicted of the crime of delivery of a controlled substance without the jury ever agreeing, as we required in *Randolph*, "that the [criminal] act occurred on a separate occasion." *Randolph*, 123 Or App at 571. The trial court neither required the state to elect which of the separate occasions it had established at trial was to be the basis for the jury's decision nor delivered instructions properly instructing the jury as to its obligation to base its decision on a single criminal act. That, as the Supreme Court complained in *Boots*, "relieves the jury from seriously confronting the question whether they agree that any factual requirement of [the crime] has been proved beyond a reasonable doubt." *Boots*, 308 Or at 375. The trial court therefore erred.

Conviction for possession of controlled substance affirmed; conviction for delivery of controlled substance reversed and remanded for new trial.