Submitted February 27, affirmed May 14, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES EDMUND GREELEY,
*Defendant-Appellant.*

Jefferson County Circuit Court
MI050278; A130800

184 P3d 1191

Ingrid Swenson, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Schuman, Judge, and Deits, Judge pro tempore.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals his conviction by a jury for reckless driving, ORS 811.140. He asserts that the trial court's concurrence instruction to the jury was inadequate, because the state presented evidence of two distinct factual occurrences to prove that defendant committed reckless driving, and the jury was not instructed that it must agree on which occurrence supported its verdict.[1] We affirm.

■ We review a trial court's refusal to give a requested instruction for errors of law in light of the facts that are most favorable to defendant. *State v. Averitt,* 187 Or App 486, 488, 68 P3d 269 (2003). At approximately 6:42 p.m. on June 21, 2005, defendant was driving northbound on Highway 97 near Madras. Another driver, V, was driving his truck directly in front of defendant at 70 miles per hour. Defendant pulled his car to within three or four feet of the rear bumper of V's truck. Defendant straddled his car on the center lane before he passed V's truck and two other cars in front of V. At the same moment, north of the intersection of Highway 97 and Jericho Lane, two or three cars were traveling in the southbound lane of the highway. The front car traveling southbound drove onto the shoulder near the fog line to avoid defendant's vehicle. V and the two drivers ahead of him braked as defendant passed them. The car directly in front of V also pulled off to the side near the fog line as defendant passed.

V, a former reserve deputy sheriff, called the Jefferson County Sheriff's dispatcher to report defendant's driving. While he was on the telephone with the dispatcher, V sped up and passed the cars that defendant had passed in order to keep pace with and follow defendant. As he was following defendant in the vicinity of the intersection of Highway 97 and Ford Lane, V saw defendant pass two more cars traveling northbound at the same time that two cars were traveling southbound toward defendant. All of the cars slowed, and both southbound cars and the northbound car in front of V pulled across the fog line as defendant passed them. While V was on the phone with the dispatcher, another witness, F, was driving southbound on Highway 97. F, who

---

[1] Defendant's remaining assignment of error does not require discussion.

was monitoring police calls on his own radio, overheard V's call. Immediately after the call, F saw defendant's vehicle coming "right at us." F moved his vehicle to the right of the fog line to avoid colliding with defendant's vehicle. F then called the sheriff's dispatcher and reported that defendant's vehicle had just passed him.

■       The entire course of events that was the subject of evidence at trial occurred on a three to four mile stretch of the highway over a span of no more than four minutes. Defendant was stopped by a sheriff's officer on Highway 97 in Madras. Defendant was arrested and charged, as pertinent here, with reckless driving under ORS 811.140.[2] The charging information alleged:

> "The defendant, on or about June 21, 2005, in Jefferson County, Oregon, did unlawfully and recklessly drive a vehicle upon a public highway, to-wit: Highway 97 in a manner that endangered the safety of persons or property; contrary to statute and against the peace and dignity of the State of Oregon."

At trial, the state's theory was that defendant drove recklessly on Highway 97, as evidenced by the fact that he was passing vehicles in the face of oncoming traffic such that other drivers had to take evasive action to avoid a head-on collision. Defendant nevertheless argued that the state presented evidence of two separate occurrences of reckless driving, that is, evidence that he dangerously passed vehicles north of Jericho Lane and evidence that he dangerously passed vehicles in the vicinity of Ford Lane. As a consequence, defendant argued, the trial court erred in failing to instruct the jury that it must agree on which factual occurrence supported a guilty verdict. The trial court ruled that the jury only needed to agree that defendant drove recklessly on Highway 97. Based on that ruling, the court instructed the

---

[2] ORS 811.140 provides:

"(1) A person commits the offense of reckless driving if the person recklessly drives a vehicle upon a highway or other premises described in this section in a manner that endangers the safety of persons or property.

"(2) The use of the term 'recklessly' in this section is as defined in ORS 161.085.

"(3) The offense described in this section, reckless driving, is a Class A misdemeanor and is applicable upon any premises open to the public."

jury that, "[t]his being a criminal case, each and every juror must agree on your verdict."[3] Defendant excepted to that instruction, and he appeals from the ensuing judgment of conviction. He renews his argument that the court failed to properly instruct the jury with respect to the concurrence requirement.

The governing legal principle was first articulated by the Oregon Supreme Court in *State v. Boots*, 308 Or 371, 780 P2d 725 (1989). In *Boots*, the defendant was charged with aggravated murder based on two different aggravating factors: (1) that the homicide was committed in furtherance of a robbery and (2) that the homicide was committed to conceal the identity of the perpetrators of the robbery. *Id.* at 374. The trial court instructed the jury that it did not need to agree on the manner in which the murder was committed, that is, which of the alternative circumstances constituted the aggravating factor. *Id.* at 374-75. Analyzing the case under the jury unanimity requirements of the version of ORS 136.450 then in effect and Article I, section 11, of the Oregon Constitution, the Supreme Court found error, concluding that each aggravating factor was an essential element of aggravated murder on which the jury must concur. To convict, the court concluded, the jury must unanimously agree on the facts required by the statute that sets out the elements of the crime. *Id.* at 377. As the court observed, it is not "factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or the left hand" that the jury must agree on, but the "facts that the law (or the indictment) has made essential to a crime." *Id.* at 379.

In *State v. Houston*, 147 Or App 285, 935 P2d 1242 (1997), we applied the *Boots* principle to facts that defendant contends are akin to those before us here. In *Houston*, the defendant was charged with one count of unlawful delivery of a controlled substance alleged to have been committed sometime during an eight-month period. At trial, the state presented evidence that the crime could have occurred at any of six different times. The trial court denied the defendant's motion to require the state to elect a specific date or event as

---

[3] Because the charge at issue was a misdemeanor, defendant was tried by a six-person jury, hence, the unanimity requirement.

the basis for the charge and also declined to instruct the jurors that they must agree, by the same number as required for conviction, on a particular delivery as the basis for their verdict. *Id.* at 288.

We reversed, concluding that the trial court had erred, under *Boots*, in not giving the requested instructions or, alternatively, in not requiring the state to elect a specific basis for the charge. *Houston*, 147 Or App at 292-93. In reaching that conclusion, we distinguished *State v. King*, 316 Or 437, 852 P2d 190 (1993), a case in which the state, to support a charge of driving under the influence of intoxicants under ORS 813.010, presented evidence that the defendant was driving with a blood alcohol content exceeding .08 percent under ORS 813.010(1)(a) and that the defendant was driving while under the influence of alcohol under paragraph (b) of the same statute. The court in *King* had held that a concurrence instruction was not required under those circumstances. The court reasoned that, as a matter of statutory construction, the individual paragraphs of ORS 813.010(1) did not set out essential elements of separate offenses, as was the case in *Boots*, but merely listed alternative methods of proving a single offense. Those were not the circumstances in *Houston*. Rather, the problem in that case was that "the jury was allowed to base its verdict on alternative factual occurrences, each of which itself would be a separate crime." *Houston*, 147 Or App at 292.

The decisive question here is whether, as in *Houston*, the jury improperly was allowed to base its verdict on alternative factual occurrences, each of which itself would be a separate crime or, as in *King*, the trial court properly instructed the jury because the state merely adduced alternative evidence to establish a single offense.

*State v. White*, 115 Or App 104, 838 P2d 605 (1992), informs our analysis in that regard. In *White*, the state brought a charge of menacing, which requires proof that the defendant acted by word or conduct that placed another in fear of imminent serious physical injury. ORS 163.190(1). At trial, evidence was admitted that the defendant, while engaged in an argument with his neighbor, first brandished a

flashlight and then waved a gun at the neighbor. The defendant argued that the trial court should have instructed the jury that it must agree on a specific act to support its verdict: either that the defendant brandished the flashlight or that he waved the gun. We disagreed, holding that proof of waving either a gun or a flashlight was merely a means of establishing the fact that, by his conduct, the defendant intended to place his neighbor in fear of imminent serious physical injury. *White*, 115 Or App at 107. As pertinent here, we stated:

> "*Boots* is inapplicable. There, the defendant was convicted of aggravated murder, which is a murder that requires proof beyond a reasonable doubt of at least one of 17 different acts. *See* ORS 163.095. Here, in contrast, no one act must be proven to support a conviction for menacing under ORS 163.190(1):
>
>> " 'A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury.'
>
> "The statute requires only that defendant acted by 'word or conduct' *and* intentionally attempted to place [the victim] in fear of imminent serious physical injury. The gravamen of the crime is the intentional attempt to place another person in fear. Defendant could have done several different acts and, if he intended thereby to attempt to place [the victim] in fear, would have committed menacing. The jury did not have to agree unanimously that he did any specific act that would cause fear in order to find him guilty of menacing."

*White*, 115 Or App at 107-08 (emphasis in original); *see also State v. Duffy*, 216 Or App 47, 53-54, 171 P3d 988 (2007) (under city ordinance proscribing "prostitution procurement activity," nonexclusive list of activities that violate the ordinance were not separate elements or a separate crime but, rather, provided alternative ways to prove a single offense).

So, too, here. Violation of the reckless driving statute requires that a defendant have "recklessly drive[n] a vehicle upon a highway or other premises described in this section in a manner that endangers the safety of persons or property." ORS 811.140(1). Defendant could have committed several

acts that, alternatively, constituted evidence of a single element—recklessness—in an episode of driving that lasted no more than four minutes. As in *White*, the state was entitled to rely on the entire course of defendant's driving to establish the element of recklessness. Unlike in *Houston*, the state did not rely on alternative occurrences, each of which necessarily would constitute a separate offense.[4] Accordingly, the trial court did not err in instructing the jury as it did.

Affirmed.

---

[4] As the trial court aptly noted, "[W]e would just be here arguing something else if the State filed fifteen different counts of Reckless Driving for every episode of crossing the fog line or crossing the center line."